1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

APPLE HILL GROWERS,

              Plaintiff/Counter-Defendant,

     v.

EL DORADO ORCHARDS, INC., et al.,

              Defendants/Counter-Claimants.

No.  2:17–cv–02085–TLN–CKD

ORDER ON DISCOVERY MOTIONS

(ECF Nos. 49, 50, 57, 59)

     Presently before the court[1] are four discovery motions:  two brought by plaintiff Apple Hill Growers ("AHG"), and two brought by defendants.  Plaintiff AHG moves first to compel defendants Brad and Mason Visman to provide supplemental responses and to produce documents responsive to certain requests for production ("RFPs") and to provide supplemental answers to certain interrogatories (ECF No. 49); and second to compel defendant El Dorado Orchards, Inc. ("EDO") to provide supplemental responses and to produce documents responsive to certain other RFPs propounded to it (ECF No. 59).  Defendants cross-move to compel AHG to provide supplemental responses and to produce documents responsive to their RFPs and to provide a supplemental answer to one interrogatory (ECF No. 57); and defendants also move to

---

[1] This matter was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

1

1   quash a subpoena duces tecum plaintiff served on EDO's accounting firm, which seeks EDO's

2   federal tax returns for the past eight years (ECF No. 50).

3       The parties filed joint statements and amended joint statements in response to the court's

4   preliminary orders, along with supporting exhibits.  (ECF Nos. 51, 61, 62, 64-66.)  The court

5   heard remote arguments on the motion on May 11, 2022, after continuing the hearing to require

6   counsel to further meet and confer and to adequately prepare the joint statements.  Catherine

7   Straight and R. Michael West appeared for plaintiff AHG; and Christopher Passarelli and Brett

8   Leininger appeared for defendants.  For the following reasons, the court GRANTS the motion to

9   quash, to a limited extent GRANTS plaintiff's motion to compel discovery from EDO, and

10  GRANTS IN PART each of the other motions.

11  **BACKGROUND**

12      **I.       Relevant Claims and Allegations**

13      This is a trademark infringement case alleging unauthorized use of plaintiff AHG's

14  registered APPLE HILL mark.  According to the First Amended Complaint ("FAC"), AHG is an

15  association of more than 50 member farms—all "located in a region of the Sierra Foothills,

16  generally east of Placerville, California," and all licensed to use the APPLE HILL mark and

17  receive advertising and promotional benefits in return.  (ECF No. 17 ("FAC") ¶¶ 1-2, 14.)

18  Individual defendants Brad and Kandi Visman, a married couple, are officers of defendant EDO

19  and manage a family farm in Placerville known as Boa Vista Orchards—which had been a

20  member of AHG from the association's founding in 1964 until 2014.  (FAC ¶¶ 4, 7, 25; see ECF

21  No. 64 at 9.)  The fourth and final defendant, Mason Visman (the Vismans' son) is a "web

22  entrepreneur" not involved in the management of EDO but who owns and manages at least two

23  websites that, according to defendants, promote the Apple Hill geographic region—and according

24  to plaintiff, use the APPLE HILL mark without permission.  (FAC ¶ 9; ECF No. 25

25  (Counterclaim), generally.)

26      Plaintiff claims it has licensed the use of APPLE HILL in connection with various goods

27  and services since 1964, and it is the owner of Federal Registration No. 1,945,541 (issued 1996)

28  for fresh fruit and fruit juices as well as Federal Registration No. 5,034,321 (issued 2016) for

1   sundry books, visitor guides, bakery goods, and holiday items.  (FAC ¶¶ 19-20.)

2          In February 2014, following a dispute over Mason Visman's websites and competing

3   trademark registration applications, AHG revoked the membership of all Visman family farms,

4   including Boa Vista / EDO, terminating their license to use the APPLE HILL mark.  (FAC ¶ 28;

5   ECF No. 25 at 11, Counterclaim ¶¶ 9-10.)  Nevertheless, defendants continued to use the APPLE

6   HILL mark, inter alia, on products with labels identifying Boa Vista Orchards as an "Apple Hill

7   Family Farm" and in connection with the advertising, promotion, and online sales of Boa Vista

8   Orchards goods and services.  (FAC ¶¶ 30-32.)  Part of the allegedly infringing advertising

9   activities include Mason Visman's ownership and management of the websites

10  www.applehillca.com and www.applehillmap.com.  In addition to the domain names themselves,

11  these websites allegedly sell goods bearing the APPLE HILL mark and redirect visitors to Boa

12  Vista Orchards instead of AHG-licensed locations.  (FAC ¶¶ 45-57.)

13          In their Answer and Counterclaim, defendants claim that EDO "uses its Boa Vista Logo,

14  the twin apple logo, and the term Apple Hill fairly to describe the geographic location of its

15  farm."  (ECF No. 25 at 3, Answer ¶ 32.)  Defendants also assert Mason Visman's ownership of

16  his own Federal Registration No. 4,682,963 for APPLE HILL in connection with "goods and

17  services originating in the Apple Hill area of California."  (Id. at 10, 20.)

18          According to defendants, "[t]his case is about whether there is or is not an Apple Hill

19  Growing Area, whether Apple Hill is a trademark (i.e. a single source identifier), whether

20  [AHG]'s trademark registrations are valid, whether [AHG] has a lawful monopoly over all uses of

21  Apple Hill, and whether [AHG] has suffered any injury or damages due to [defendants'] use of

22  Apple Hill."  (Id. at 10, Counterclaim ¶ 8.)

23          The FAC asserts claims under the Lanham Act for trademark infringement and false

24  designation of origin, 15 U.S.C. §§ 1114, 1125(a); claims under the Anti-Cybersquatting

25  Consumer Protection Act, 15 U.S.C. § 1125(d), for Mason Visman's websites; and California

26  statutory and common law claims of unfair competition.  (FAC at 13-18.)  As relevant to the

27  instant discovery disputes, within its Lanham Act claims, AHG alleges it is "entitled to

28  Defendants' profits, Plaintiff's damages, costs, and attorney's fees, pursuant to 15 U.S.C.

Section 1117." (FAC ¶¶ 60, 66.)  Likewise, the FAC's prayer for relief requests an order both

(¶ 6) "requiring Defendants to account for, and pay to Plaintiff [AHG], any and all profits arising

from the foregoing acts," including increased or trebled profits under 15 U.S.C. § 1117, and (¶ 7)

requiring defendants to pay "damages in an amount as yet undetermined caused by the foregoing

acts," and trebling those damages under § 1117 as well.  (FAC at 19, Prayer ¶¶ 6-7.)

Defendants counterclaim for cancellation of AHG's trademark registrations, unfair

competition, unjust enrichment, and unlawful group boycott (based on AHG prohibiting its

members from doing business with Mason Visman).  (ECF No. 25 at 9-16.)  As relevant to these

motions, defendants also assert affirmative defenses of fair use, trademark misuse, laches, and

unclean hands.  (Id. at 6-9.)  Overall, defendants take the position in these discovery motions that

"AHG does not itself make or sell goods bearing the APPLE HILL mark.  Rather, it provides

information about the area and its members' farms in print newsletters, the website

www.applehill.com, and an 'Apple Hill' Facebook page."  (ECF No. 66 at 5.)

## II.      Procedural History & Discovery Disputes

AHG filed this suit in 2017, and after a long initial delay by the court in ruling on

defendants' motion to dismiss and by the parties in submitting a status report thereafter, the

Pretrial Scheduling Order came out in April 2021.  (ECF No. 29.)  The close of fact discovery

was set for February 28, 2022, as requested by the parties, with a dispositive motions deadline of

August 25, 2022.  (Id. at 2, 4.)  The parties have since stipulated to extensions of the discovery

deadlines, with fact discovery now set to close less than one month from now on June 3, 2022.

(ECF No. 55 (leaving dispositive motions deadline unchanged).)

Defendants started serving discovery requests in June 2021.  (ECF No. 66 at 2.)  It was

not until November 2021, some six months after the case was scheduled, that plaintiff's counsel

Catherine Straight—a sole practitioner based in Sacramento—began serving discovery requests

on defendants.  (ECF No. 64 at 10.)  Defendants at the time were also represented by a sole

practitioner, Paul Reidl, who failed to respond to plaintiff's substantial requests within the

standard 30-day deadlines set by the Federal Rules, in part due to their arrival during the holiday

season.  In January 2022, the undersigned denied without prejudice AHG's motion to compel the

requested discovery from Mason Visman, finding the motion premature.[2]  (ECF Nos. 32, 39.)

Defense counsel Mr. Reidl has since joined a firm of some 30 attorneys based in Napa, and Christopher Passarelli, a partner at the firm, appears to have taken over the discovery negotiations for defendants.  While some progress has been made, from the court's perspective discovery in this case is going very poorly.  Defendants report that plaintiff has produced fewer than 100 documents over the last ten months of discovery; and defendants have only recently begun producing documents of their own, delayed in part by the parties' inability to agree upon the terms of a stipulated protective order.  On April 19, 2022, the parties filed, and the court quickly approved, a two-tier stipulated protective order permitting designation of materials as "Confidential" or "Highly Confidential – Attorneys' Eyes Only."  (ECF No. 60.)  Nevertheless, two of the instant discovery motions preceded the entry of the stipulated protective order, and none of the present motions are entirely resolved by it.

**RELEVANT LAW**

I.      **The Lanham Act**

A.  **Actionable Violations**

As noted, the FAC contains Lanham Act causes of action for trademark infringement under 15 U.S.C. § 1114, which protects registered marks, and false designation of origin under 15 U.S.C. § 1125(a), which protects both registered and unregistered marks.  Both claims require proof of the same elements to establish a violation.  Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1046 & n.6 (9th Cir. 1999).  The plaintiff "must prove:  (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion."[3]  Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638

---

[2] The parties were also ordered to attend a settlement conference before another magistrate judge, but the case did not settle.  (ECF Nos. 39, 42, 48.)

[3]  The Ninth Circuit uses the "so-called Sleekcraft factors" to "guide the determination of a likelihood of confusion."  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).  These factors are: "[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines."  Network Automation, 638 F.3d at

1    F.3d 1137, 1144 (9th Cir. 2011).

2              **B. Recovery under the Lanham Act**

3        For established violations, 15 U.S.C. § 1117 sets forth the available forms of recovery.

4    Section 1117 permits recovery, "subject to the principles of equity," of "(1) defendant's profits,

5    (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a)

6    (also permitting prevailing party attorney fees in exceptional cases).  The second category,

7    "damages sustained by the plaintiff," "are typically measured by any direct injury which a

8    plaintiff can prove, as well as any lost profits which the plaintiff would have earned but for the

9    infringement." Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993), abrogated

10   on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179 (9th Cir. 2016).

11       "Because proof of actual damage is often difficult," the Lanham Act also permits recovery

12   of "damages based on defendant's profits on the theory of unjust enrichment." Id. (emphasis

13   added); see 5 McCarthy on Trademarks and Unfair Competition § 30:59 (5th ed.) ("Because of

14   the difficulties of proving an actual diversion of sales, the courts often assumed or presumed that

15   the infringer's profits consisted entirely of profits on sales that would have been made by plaintiff

16   but for the infringing actions." (further stating that in competitive relationships, courts continue to

17   use this damages measurement)).  Where the parties are competitors, and the "mark owner cannot

18   prove actual damages attributable to the infringer's misconduct (e.g., specific instances of lost

19   sales), its recovery of an equitable share of the infringer's profits serves, inter alia, as a 'rough

20   measure' of the likely harm that the mark owner incurred because of the infringement, while also

21   preventing the infringer's unjust enrichment and deterring further infringement." Venture Tape

22   Corp. v. McGills Glass Warehouse, 540 F.3d 56, 63 (1st Cir. 2008).  These two categories of

23   recovery are totally distinct, and "the recovery of both plaintiff's lost profits and disgorgement of

24   defendant's profits is generally considered a double recovery under the Lanham Act." Nintendo

25   of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1010 (9th Cir. 1994).

26   ////

27   _____

28   1143 n.2.

As to the first-listed avenue for recovery (defendant's profits), § 1117(a) specifies that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Id.  The equitable remedy of "an accounting is intended to award profits only on sales that are attributable to the infringing conduct." Lindy Pen, 982 F.2d at 1408; see Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1075-76 (9th Cir. 2015) (categorizing disgorgement of profits as equitable, not legal, remedy, and stating "[t]he trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement").

"The plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty." Lindy Pen, 982 F.2d at 1408.  "Then the burden shifts to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's [] profits." Fifty-Six Hope Rd. Music, 778 F.3d at 1076. Ultimately, it is up to the trial court, in its equitable discretion, to determine the amount to award the plaintiff based on an accounting of defendant's profits.  Id. ("Any decision concerning the awarding of an accounting of profits remedy should remain within the discretion of the trial court." (cleaned up)).

With this overview in mind, the court turns to the disputed discovery requests, many of which relate to estimating plaintiff's expected recovery in this action.

**DISCUSSION**

The court begins by addressing together the several discovery disputes regarding defendant EDO's federal and state tax returns.  The court then addresses plaintiff's remaining discovery requests from its twin motions to compel, before closing with defendants' cross-motion to compel.

**I.      Discovery of EDO's Tax Returns**

Three of the present motions raise issues regarding plaintiff AHG's attempts to obtain EDO's federal tax returns and California state sales tax returns for the period of alleged infringement.  First, defendants move to quash a third-party subpoena plaintiff served on EDO's accounting firm, Roberts & Company, Inc., seeking EDO's federal returns for tax years 2014 –

1   2021.  (ECF No. 50.)  Second, defendants request as part of their motion to compel that, if the

2   subpoena is not quashed, that the federal tax returns be ordered to be treated as Highly

3   Confidential under the stipulated protective order.  (ECF No. 66 at 28.)  Third, AHG moves to

4   compel EDO to produce, in response to RFPs 1-9, its California state sales tax returns "for any

5   reporting period during" the years 2014 – 2022.  (ECF Nos. 59, 62 at 8-11.)  The court addresses

6   these requests together, after first establishing the governing framework.

7   **A.  Governing Standards**

8   *1.  Motion to Compel & Motion to Quash*

9   Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain

> discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be
> discoverable.

15   Fed. R. Civ. P. 26(b)(1).  For purposes of discovery, relevance "has been construed broadly to

16   encompass any matter that bears on, or that reasonably could lead to other matter that could bear

17   on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340,

18   351 (1978).

19   A party may move for an order compelling production if another party fails to produce

20   documents or allow inspection requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B)(iv).  The

21   party seeking to compel discovery responses must make a threshold showing that the discovery

22   sought is relevant.  See, e.g., Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co., 981 F.2d 429,

23   438-39 (9th Cir. 1992).  Once relevance is shown, or if relevance is plain from the face of the

24   request, the party who is resisting discovery has the burden to show that discovery should not be

25   allowed.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); see Superior

26   Commc'ns v. Earhugger, Inc., 257 F.R.D. 215, 217 (C.D. Cal. 2009) ("The party who resists

27   discovery has the burden to show discovery should not be allowed, and has the burden of

28   clarifying, explaining, and supporting its objections.").

As to subpoenas, "[o]n timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added).  Further, "[t]o protect a person subject to or affected by a subpoena," a court *may* quash or modify a subpoena requiring the disclosure of "a trade secret or other confidential . . . commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i). Where quashing is permissive, the court may alternatively specify conditions of production if the serving party "shows a substantial need for the . . . material that cannot be otherwise met without undue hardship" and ensures reasonable compensation of the subpoenaed person.  Fed. R. Civ. P. 45(d)(3)(C).

### 2. *Discoverability of Tax Returns*

As both sides recognize, under federal law, "[t]ax returns do not enjoy an absolute privilege from discovery."  Premium Serv. Corp. v. Sperry & Hutchinson Co., 511 F.2d 225, 229 (9th Cir. 1975).  "Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns."  Id.

Plaintiff argues that Heathman v. U.S. Dist. Ct. for Cent. Dist. of California, 503 F.2d 1032 (9th Cir. 1974), provides "the proper analysis respecting a party's challenge to producing tax returns."  (ECF No. 64 at 40.)  In Heathman, the defendants petitioned the Court of Appeals for a writ of mandamus to overturn the district court's order for defendants' accountants to produce defendants' income tax returns in a federal securities fraud case.  Id. at 1033.  The Court of Appeals first rejected petitioners' argument that the scope of their asserted privilege should be measured by reference to California state law (which does recognize a privilege for tax returns). Id. at 1034 ("We hold that the question of the existence and scope of the taxpayer's privilege, if any, to withhold tax return information is to be determined by federal law for the purposes of this federal question case." (footnote omitted)).  The court then further rejected petitioners' argument that under federal law their tax returns were privileged pursuant to 26 U.S.C. § 6103(a)(2), with the court holding that § 6103(a)(2) "only restricts the dissemination of tax returns by the

9

government" and "does not otherwise make copies of tax returns privileged." Id. at 1035 (and therefore denying extraordinary mandamus relief).

Thus, Heathman confirms that tax returns do not enjoy an absolute privilege under federal law.  However, it does not rule out protecting disclosure of tax returns in appropriate cases.  Id. at 1035 (recognizing that some district courts recognize "a public policy against disclosure of tax returns").  Indeed, the next year, the Ninth Circuit upheld a district court's order in an antitrust suit to quash a subpoena of tax returns based on this public policy.  See Premium Serv., 511 F.2d at 229 ("The district court, under the circumstances of this case, could reasonably have based its order to quash the subpoena of tax returns on the primacy of this policy." (footnote omitted)).

Defendants provide the prevailing two-pronged test that district courts generally apply in upholding this public policy against unnecessary public disclosure.  "First, the court must find that the returns are relevant to the subject matter of the action.  Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable."  A. Farber and Partners, Inc. v. Graber, 234 F.R.D. 186, 191 (C.D. Cal. 2006); see Aliotti v. Vessel SENORA, 217 F.R.D. 496, 497-98 (N.D. Cal. 2003) (collecting cases); United Studios of Self Def., Inc. v. Rinehart, 2019 WL 3308825, at *1 (C.D. Cal. May 2, 2019) (reciting same test); Nat.-Immunogenics Corp. v. Newport Trial Grp., 2017 WL 10562762, at *4 (C.D. Cal. June 27, 2017) (adopting same standard); Brady v. Grendene USA, Inc., 2015 WL 4523220, at *6 (S.D. Cal. July 24, 2015) (same).  "The party seeking production has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable."  Nat.-Immunogenics, 2017 WL 10562762, at *4 (quoting A. Farber, 234 F.R.D. at 191).

## B.  Application

On March 8, 2022, plaintiff served its First Set of RFPs on defendant EDO.  (ECF No. 62.1 at 4-11, Ex. A.)  These included RFP Nos. 1-9, which separately seek "Each CALIFORNIA STATE SALES TAX RETURN filed by or on behalf of [EDO] for any reporting period during the year[s] 2014[ – 2022].  (Id. at 6-7.)  On April 7, 2022, EDO served its responses, asserting a common litany of objections for all nine RFPs—including refusal to

1   produce without a stipulated protective order, privilege and/or public policy protection, and

2   ambiguity as to the phrase "any reporting period."  (Id., Ex. B.)  Although a stipulated protective

3   order was entered on April 21, 2022, EDO has not amended its responses or produced its state tax

4   returns.

5          Meanwhile, on March 28, 2022, plaintiff served the subpoena at issue on EDO's certified

6   public accounting firm, Roberts & Co, which is not a party to this action.  (ECF No. 64 at 37.)

7   The subpoena demanded electronic production of EDO's federal tax returns for eight tax years:

8   2014 – 2021.  (Id.)  Plaintiff's counsel contemporaneously notified defendant EDO of the

9   subpoena, and on learning of defendants' intent to move to quash, Roberts & Co. did not produce

10  EDO's tax returns.  (Id. at 37-38.)

11          *1.  Standing for Motion to Quash*

12          Usually only the recipient of a subpoena may move to quash, and the Ninth Circuit has not

13  explicitly addressed whether a party can move to quash a subpoena served on a non-party.  See

14  Marshall v. Galvanoni, 2019 WL 2491524, at *2 (E.D. Cal. June 14, 2019).  The general rule

15  developed in the district courts is that a party lacks standing to quash a Rule 45 subpoena "unless

16  the objecting party claims some personal right or privilege with regard to the documents sought."

17  Myers v. Bates, 2020 WL 7769926, at *1 (E.D. Cal. Dec. 30, 2020) (quoting 9A Charles Alan

18  Wright & Arthur R. Miller, Federal Practice and Procedure, § 2459 (3d ed. 2008)).  Some courts

19  alternately frame the rule as turning on whether the objecting party possesses "a privilege or

20  privacy interest in the requested documents."  See, e.g., Doutherd v. Montesdeoca, 2018 WL

21  3008867, at *2 (E.D. Cal. June 15, 2018).

22          Plaintiff briefly argues that defendants lack standing to bring this motion to quash

23  because, as discussed above, they can claim no "privilege" for the tax returns.  (Id. at 39-40.)

24  While indeed there is no formal privilege for these documents, at least EDO has a "personal

25  right" and a "privacy interest" regarding its own tax returns.  See Schmulovich v. 1161 Route 9,

26  LLC, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (concluding that personal rights claimed

27  with respect to bank accounts gave party standing to challenge a non-party subpoena served upon

28  ////

1   financial institutions).  Thus, at least one party has standing to bring the present motion to quash.[4]

2   *2.  Relevance*

3   For the first prong of the test for producing tax returns, it is plaintiff AHG's burden to

4   show the relevance of the federal tax returns sought from Roberts & Co. in the subpoena and the

5   state sales tax returns sought from EDO in RFP Nos. 1-9.  See A. Farber, 234 F.R.D. at 191.  At

6   the hearing, plaintiff's counsel clarified that she does not need both sets of tax returns, but simply

7   was pursuing every avenue to obtain EDO's financials.  AHG seeks these records in order to meet

8   its burden when it comes time to request an accounting/disgorgement of EDO's profits under

9   § 1117(a)(1).  (ECF Nos. 62 at 8, 64 at 38-39.)

10   It is hard to know whether obtaining these tax returns, revealing EDO's overall gross sales

11   (in the State sales tax returns) and EDO's overall income (in the federal returns) for the years in

12   question will necessarily satisfy plaintiff's initial burden "to prove the defendant infringer's gross

13   revenue *from the infringement*."  Fifty-Six Hope Rd. Music, 778 F.3d at 1076 (emphasis added);

14   see Lindy Pen, 982 F.2d at 1408 ("[A]n accounting is intended to award profits only on sales *that*

15   *are attributable to the infringing conduct*." (emphasis added)); see also Mishawaka Rubber &

16   Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205-07 (1942) (interpreting similar language

17   of Trade-Mark Act of 1905 to mean that "[t]he burden is the infringer's to prove that his

18   infringement had no cash value in sales made by him.  If he does not do so, the profits made *on*

19   *sales of goods bearing the infringing mark* properly belong to the owner of the mark." (emphasis

20   added)).

21   The Ninth Circuit routinely upholds trial courts' denials of disgorgement-of-profits

22   awards where the plaintiff fails to make a prima facie showing that the defendant profited

23   specifically from the infringing conduct.  See, e.g., Rolex Watch, U.S.A., Inc. v. Michel Co., 179

24   _____

25   [4] Although objections on grounds of relevance and undue burden are not within the ambit of EDO's standing on the motion to quash, they are cognizable if the motion is construed as seeking

26   a protective order—and such objections are of course permissible in the context of the parallel motion to compel from EDO itself copies of its California state sales tax returns.  See Clair v.

27   Schlachter, WL 2984107, at *5 (E.D. Cal. May 23, 2016) (noting that irrelevance and undue burden are not grounds for motion to quash non-party subpoena but are grounds for motion for

28   protective order).

1  F.3d 704, 712 (9th Cir. 1999) (no abuse of discretion where plaintiff Rolex "had not adequately

2  demonstrated what portion of [defendant] Mottale's sales were attributable to altered 'Rolex'

3  watches"); Lindy Pen, 982 F.2d at 1408.  In Lindy Pen, the Court of Appeals found the trial court

4  acted within its discretion in denying a disgorgement award because the plaintiff had only put

5  forth evidence of the defendant's "total sales," not evidence of sales of the infringing pen within

6  the market at issue.  Id. (rejecting plaintiff-appellant's impossibility argument because plaintiff

7  "had access through discovery to Bic's records from which a reasonable estimate could have been

8  accomplished").

9         However, that is more a question of proof than a question of relevance.  At the hearing,

10  notwithstanding defendants' argument that only EDO's sales of goods bearing the mark could be

11  attributed to potentially infringing conduct, the court was persuaded by plaintiff that all of EDO's

12  sales during the years in question could, at least conceivably, be attributed to infringing conduct.

13  For purposes of this discovery motion, that satisfies the low relevance bar.  See Lindy Pen, 982

14  F.2d at 1408 ("The plaintiff has only the burden of establishing the defendant's gross profits from

15  the infringing activity with reasonable certainty."); Brady, 2015 WL 4523220, at *6 ("Whether or

16  not MIB sold products under the challenged marks in 2013 bears directly upon Grendene's

17  defenses in this case, and MIB's tax return is probative evidence of the company's 2013 sales.").

18  Whether the tax return data alone is enough to meet plaintiff's burden for an accounting of profits

19  will be a question for the trial judge.[5]

20                        *3.  Other Less Intrusive Means*

21         With relevance met, defendants bear the burden on the second prong of the tax-returns test

22  to show "that other sources exist from which the information is readily obtainable," thereby

23  removing any "compelling need" for the returns.  A. Farber, 234 F.R.D. at 191.  Courts often find

24  there to be less intrusive means to obtain information about a party's income or financial

25  condition, short of disclosure of tax returns.  See United Studios of Self Def., Inc. v. Rinehart,

26  
27  [5] EDO's argument that its tax returns are not relevant because plaintiff cannot show its own lost profits misses the point.  (See ECF No. 64 at 35, arguing that AHG does not produce or sell any goods under APPLE HILL mark and so does not profit therefrom.)  Plaintiff seeks this discovery

28  regarding EDO's made profits, not AHG's own lost profits.

2019 WL 3308825, at *1 (C.D. Cal. May 2, 2019) (denying motion to compel federal and state

tax returns in trademark infringement case because plaintiff had not exhausted less intrusive

means, given that defendants "already produced profit and loss statements, balance sheets,

transactions lists, and general ledgers"); Sandoval v. Lagoon Assocs., LLC, 2016 WL 9113994

(C.D. Cal. Mar. 23, 2016) (in punitive damages context, no compelling need for tax returns where

defendants were already compelled to provide financial statements and balance sheets);

Entrepreneur Media, Inc. v. Smith, 2013 WL 6185246, at *4 (E.D. Cal. Nov. 26, 2013) (in

judgment-debtor examination discovery, denying motion to compel tax returns to assess past

earnings because there were already requests for production of documents "reflecting any income,

profits, or proceeds defendant has received").

        One typical, less intrusive option is for the moving party to "propound an interrogatory

that directly asks what [the opponent]'s total earnings were for each year in question as reported

in [the opponent]'s tax returns." Aliotti, 217 F.R.D. at 498 (finding this method "strikes the

correct balance under Premium Serv. Corp and Heathman because it eliminates the need to delve

into any accompanying personal information that is patently irrelevant to the case" (cleaned up)).

Defendants inform the court that plaintiff has in fact propounded a First Set of Interrogatories to

EDO, in which Interrogatory Nos. 1 – 5 inquire about EDO's "gross receipts or sales" during the

years 2014 – 2021.  (ECF No. 64 at 36.)  (As of the hearing, the deadline for answers to these

interrogatories had not yet arrived and EDO had not yet answered them.)  Were there more than a

mere three weeks left before the close of discovery, the court would readily find these

interrogatories a satisfactory less intrusive means.[6]  Although defense counsel promised the court

that EDO would substantively answer those interrogatories, defendants' responses to previous

interrogatories and requests for production do not give the court confidence that the forthcoming

answers would put the issue to rest expeditiously.

        Likewise, plaintiff recently propounded a Second Set of RFPs to EDO, in which

repetitiously numbered Request Nos. 1 – 8 seek EDO's federal returns for tax years 2014 – 2021.

---

[6] At the hearing, plaintiff's counsel agreed that, if substantively and directly answered, the
responses to these interrogatories would suffice for her purposes.

1    (ECF No. 64 at 36.)  These would obtain from EDO directly what plaintiff currently seeks from

2    EDO's accountant in the instant subpoena, so they cannot be called a "less intrusive" means.

3    And, again, the court is not confident that EDO will in fact produce anything in response to those

4    RFPs. (Such responses also were not due prior to the hearing on the current motions.)

5            As a final proposed less intrusive means, EDO offers that, as soon as next week, its

6    accounting firm can finalize a set of "alternate financial reports" that "will provide Plaintiff with

7    the necessary financial information without disclosing Defendants' confidential financial

8    information that is irrelevant to this case."  (ECF No. 62 at 17.)  From defense counsel's

9    arguments at the hearing, the court understands these reports would break out the amount of

10   revenue from EDO's sales of "Apple Hill" "branded goods" in the years in question—in keeping

11   with defendants' position that sales of unbranded goods would not even arguably be attributable

12   to infringement.  As discussed in the relevance portion, however, that position may not ultimately

13   prevail if and when an equitable accounting is sought at the proof stage.  Therefore, the court is

14   not persuaded that these alternate financial reports would equally provide "the information

15   contained therein [on the tax returns]."  A. Farber, 234 F.R.D. at 191.

16           A further factor in this balancing is the added protection of the two-tier stipulated

17   protective order now in place.  Production of EDO's tax returns will be made subject to their

18   designation as Highly Confidential – For Attorneys' Eyes Only, thereby alleviating concerns over

19   their public disclosure.

20           In light of the short time left in the discovery period (which plaintiff states it will not seek

21   to extend any further), the court finds no less intrusive means for plaintiff to obtain the desired

22   financial information, which shall be produced subject to the parties' stipulated protective order.

23           **C. Conclusion**

24           The court finds EDO's production of its California state sales tax returns to be the more

25   appropriate of the two routes for disclosure—the other option being Roberts & Co.'s production

26   of EDO's federal tax returns in response to the subpoena.  First, the State sales tax returns appear

27   more relevant to meeting plaintiff's burden "to prove defendant's *sales*."  15 U.S.C. § 1117(a)

28   (emphasis added) ("In assessing profits the plaintiff shall be required to prove defendant's sales

only; defendant must prove all elements of cost or deduction claimed.").  Further, ordering direct production by EDO will serve the interest of reducing burden on a non-party to this action (the accounting firm), and allow EDO to self-mark the documents as Highly Confidential.

Accordingly, the court GRANTS defendants' motion to quash the subpoena served on Roberts & Co. (ECF No. 50), and GRANTS plaintiff's motion to compel (ECF No. 59) as to plaintiff's First Set of RFPs Nos. 1-9 for EDO's California state sales tax returns.  To address the purported ambiguity as to the years requested, **EDO shall produce all of its California state sales tax returns filed for sales received from January 1, 2014, through the present.**  Such production shall be made in electronic form <u>no later than May 20, 2022</u>.  Contemporaneous with that production, EDO shall supplement its responses to RFPs No. 1-9 to eliminate non-specific objections and state that all responsive documents have been produced.

## II.      <u>Remainder of Plaintiff's Motion to Compel Discovery from EDO</u>

In addition to moving to compel EDO's production of the State tax returns in RFP Nos. 1-9, plaintiff's same motion seeks to compel EDO to provide supplemental responses and production of documents responsive to all 26 of the other RFPs contained in plaintiff's First Set of RFPs to EDO (Nos. 10-36).  (ECF No. 62 at 2, 11-14.)  Although plaintiff's counsel splits these 26 RFPs into six groupings and describes their relevance with some specificity, she presents the identical generic argument regarding EDO's purportedly deficient responses for all six groups.  Plaintiff's counsel argues for each set:

> The Response consists of lengthy statements purporting to assert a laundry list of "objections" without any specificity or reasons therefore.  Instead, most of these "objections" are prefaced with the statement "to the extent that" in reference to the Request.  They are the type of obstructionist boilerplate objections that the most recent changes in the Discovery Rules were meant to curtail.  The statements respecting actual production are evasive and incomplete, and it is impossible to determine whether Defendant EDO will produce any documents.  [[Regarding RFPs 12-13 only, she adds: "Some objections are frivolous."]]  The "objections" fail to comply with Rule 34(b)(2)(B) and (C), and have been interposed for an improper purpose in violation of Rule 26(g)(1)(B).

(ECF No. 62 at 11-14.)

////

Although the party resisting discovery has the burden of "clarifying, explaining, and supporting its objections," Superior Commc'ns, 257 F.R.D. at 217, plaintiff's counsel's utterly nonspecific argument fails to adequately present the discovery dispute for the court's consideration in the first place.  It also calls into question the sufficiency of counsel's meet-and-confer efforts.

Nevertheless, the court has briefly reviewed these RFP responses and finds merit to two of plaintiff's overarching complaints with them.  The court will not address every individual objection asserted in these RFPs, given that plaintiff does not even mention them by name in the Joint Statement.  However, plaintiff's counsel's approach to broadly addressing these RFPs in the Joint Statement is not altogether unreasonable given the shear volume of objections EDO levels in each response.  While most of the responses contain at least one objection that specifically relates to the material being requested, each response does also contain a laundry list of objections that are not explained or connected to the specific request.  Each objection is framed as an objection "to the extent that . . ."; and then each of the responses closes with the following opaque statement regarding actual production:

> Subject to and without waiving the foregoing objections, to the extent such documents exist in its possession or control, the Responding Party will produce within a reasonable time relevant non-privileged documents which it believes to be responsive to this request, which it is able to locate upon conducting a reasonable search, such documents to be produced subsequent to the entry of a Court-approved Protective Order in this action.

(E.g., ECF No. 62.1 at 32, Response to RFP No. 11.)

The combined effect of all this is that plaintiff's counsel is left with no way to know whether EDO is actually withholding any responsive materials; if so, what was (or will be) produced and what was/will not; and the specific reason for not producing whatever is being withheld.  Rule 34 plainly requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(C).  EDO's current responses to plaintiff's First Set RFP Nos. 10-36 do not do this.

////

1    The court also finds merit to plaintiff's counsel's complaint that this repeated closing

2  statement reveals that defendant did not conduct any search for responsive documents before

3  responding to the RFPs.  EDO argues that it is unaware of any requirement that a search must be

4  conducted <u>before</u> responding to document requests.  Rule 34 may not be explicit about this, but

5  the requirement just quoted (that "[a]n objection must state whether any responsive materials are

6  being withheld on the basis of that objection") strongly implies that a search must be performed

7  pre-response.  The case law is clear that "a party has an obligation to conduct a reasonable inquiry

8  into the factual basis of his responses to discovery, and, based on that inquiry, a party responding

9  to a Rule 34 production request is under an affirmative duty to seek that information reasonably

10  available to it from its employees, agents, or others subject to its control."  <u>A. Farber</u>, 234 F.R.D.

11  at 189 (citations and quotation omitted).  "Upon receipt of a properly served request, a responding

12  party is required to conduct a 'reasonable search' for responsive documents."  <u>Trujillo v. Princess</u>

13  <u>Cruise Lines, Ltd.</u>, 2021 WL 3604518, at *6 (C.D. Cal. Apr. 23, 2021).

14    "If the responding party cannot conduct a 'careful and thorough' search for all responsive

15  documents within the thirty-day period, it has an obligation to seek appropriate extensions . . . ."

16  <u>Novelty, Inc. v. Mountain View Mktg., Inc.</u>, 265 F.R.D. 370, 376 (S.D. Ind. 2009) (cleaned up).

17  "Unilaterally deciding to conduct a cursory initial search to be followed by 'rolling' productions

18  from subsequent, more thorough, searches is not an acceptable option."  <u>Id.</u>  Once a party has

19  served its response to a request for production, it must then *supplement* its response "in a timely

20  manner if the party learns that in some material respect the . . . response is incomplete or

21  incorrect, and if the additional or corrective information has not otherwise been made known to

22  the other parties during the discovery process or in writing."  Fed. R. Civ. Pro. 26(e)(1)(A).

23    The court understands that defendants have faced a "barrage" of late-breaking discovery

24  requests from plaintiff.  (ECF No. 62 at 19.)  **In amending its responses in compliance with this**

25  **order, however, EDO must conduct the searches necessary to certify in its responses**

26  **whether responsive documents have been withheld, and if so, based on what objections.**

27  **EDO's amended responses must explain how each and every objection asserted specifically**

28  **relates to the given request.**

At the hearing, despite plaintiff's inadequate presentation of the RFP issues, the court discussed RFP Nos. 10-36 with counsel.  The court expects defendant EDO's amended responses to factor in the guidance from that conversation as well.  Actual production of responsive documents shall be completed <u>no later than May 20, 2022</u>.

### III.   <u>Plaintiff's Motion to Compel Discovery from Brad and Mason Visman</u>

Next, the court turns to plaintiff's motion to compel discovery from two of the individual defendants, Brad and Mason Visman.  (ECF No. 49.)  As to Mason Visman, this appears to be a renewal of plaintiff's original motion denied without prejudice in January 2022.

#### A.  Sanctions

Before addressing the motion's substance, the court must first impose sanctions for plaintiff's counsel's unprofessional conduct in preparing this motion.  First, plaintiff's counsel did not send defense counsel the original draft Joint Statement for this motion until 11:36 AM on the day of the filing deadline (ECF No. 51 at 6), leaving defendants less than a day to respond with their contentions and additions.  The purpose of requiring a joint statement is for the parties to collaborate and communicate regarding the substance of their disputes.  Sending an initial draft on the morning the statement is due does a disservice both to one's opponent and to the court. The court deemed it necessary to have the parties file an amended joint statement so that defendants could fully respond.  The court also has had to expend an unusual amount energy walking the parties through their disputes and setting specific deadlines for preparing the joint statements because of counsel's inability to collaborate productively and comply with the spirit of the Local Rules.

Second, when the Amended Joint Statement came in for this motion (ECF No. 64), the court was informed of further unprofessional conduct by plaintiff's counsel in filing the Amended Joint Statement.  Defense counsel averred in an accompanying declaration that "Plaintiff's counsel did not provide a copy of the Joint Statement to Defendants' counsel prior to filing, and the Introduction was submitted without counsel's review or consent."  (ECF No. 65 ¶ 12.)  While the court's preliminary order (ECF No. 53) did not specifically direct plaintiff's counsel to re-circulate the compiled Amended Joint Statement before filing, it is by nature a *joint* statement

19

signed by counsel for each party.  Plaintiff's counsel's filing of a document bearing defense counsel's signature without counsel's consent likewise warrants sanctions, on the terms provided at the conclusion of this order.

### B.  Common Issues Raised

Turning to the substance of plaintiff's motion, plaintiff AHG seeks further responses (and production) from both Brad and Mason Visman in response to interrogatories and RFPs propounded on each of them in November and December 2021.  The court first addresses two common issues plaintiff raises for multiple discovery requests.

#### 1.  *Objections Not Waived for Untimeliness*

Plaintiff argues that all of Brad and Mason's objections asserted in response to their respective RFPs and interrogatories should be deemed waived as untimely.

Unless otherwise agreed, a party must serve its answers and any objections to interrogatories within 30 days after their service—and must likewise respond within 30 days of service to requests for production, as well.  Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A).  Generally, "a failure to object to discovery requests within the time required constitutes a waiver of any objection."  Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992).  However, Rule 33, governing interrogatories, allows courts to excuse a party's failure to timely assert objections "for good cause."  Fed. R. Civ. P. 33(b)(4); see Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (noting failure to object constitutes waiver under Rule 33 "in the absence of an extension of time *or good cause*" (emphasis added)).  Although Rule 34 does not contain an analogous express "good cause" exception, courts "generally agree that there is no reason to treat waiver under Rule 34 any different than Rule 33."  Ocean Garden Prod. Inc. v. Blessings Inc., 2020 WL 4284383, at *1 (D. Ariz. July 27, 2020) (quoting Liguori v. Hansen, 2012 WL 760747, at *12 (D. Nev. Mar. 6, 2012).  Accordingly, courts "retain discretion to relieve a late or non-responding party from the potentially harsh consequences associated with waiver."  Liguori, 2012 WL 760747, at *11.

Rule 34(b) does not impose a per se waiver penalty for untimely discovery responses.  Cf. Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont., 408 F.3d 1142, 1149 (9th

1    Cir. 2005) (rejecting a "per se waiver rule that deems a privilege waived if a privilege log is not

2    produced within Rule 34's 30-day time limit").  Certainly, courts will not hesitate to order

3    objections waived when a responding party offers no explanation for its failure to respond to

4    discovery requests or when many months go by without a response to the propounding party.  See

5    Smith v. County of Sacramento, 2021 U.S. Dist. LEXIS 41069, at *4 (E.D. Cal. Mar. 4, 2021);

6    Stewart v. Fu, No. 2:19-CV-0286-JAM-CKD, 2021 WL 516709, at *2 (E.D. Cal. Feb. 11, 2021).

7          Here, Mason Visman served his answers to plaintiff's Set One Interrogatories and his

8    responses to plaintiff's Set One RFPs on January 17, 2022, one month beyond their 30-day due

9    date. (ECF No. 64 at 13, 17.)  Brad Visman served his answers to plaintiff's Set One

10   Interrogatories and his responses to plaintiff's Set One RFPs on January 25, 2022, one week after

11   their 30-day due date.  (Id. at 21, 23.)  (Each defendant then served supplemental RFP responses

12   on February 22, 2022.)  According to defense counsel, the requested discovery was voluminous,

13   "including 23 broad interrogatories, many with multiple sub-parts, and 53 document requests" for

14   Mason.  (ECF No. 64 at 25.)  Defense counsel, consisting of just Mr. Reidl at the time, requested

15   an extension until January 15, 2022 as a courtesy and because he had a pre-planned two-week

16   vacation from December 17 – 31, 2022.  (Id.)  Mason's efforts to respond were interrupted by

17   "repeated, extended power outages caused by [] December storms and the Holiday season."  (Id.)

18   And plaintiff's counsel served Brad Visman's interrogatories and RFPs on the first day of Mr.

19   Reidl's known vacation.  (Id. at 31.)

20         Without concluding that these circumstances themselves necessarily amount to good

21   cause—and despite noting that defense counsel failed even to request an extension for Brad's

22   responses—the court excuses defendants' delayed responses in this instance because of the

23   minimal nature of the delay and the lack of prejudice to plaintiff.  Defendants' responses were,

24   respectively, late by one month (for Mason) and one week (for Brad).  Although at the time of

25   service the fact-discovery deadline was February 28, 2022, the parties (at the court's proposal) on

26   January 5, 2022, stipulated to extend the fact-discovery deadline by two months to May 2, 2022.

27   (ECF No. 33.1.)  This left plaintiff's counsel four months to address any deficiencies in the

28   ////

1  substance of the responses and answers.  Defendants' objections are not waived due to untimely

2  assertion.

3  ## 2.  *Sufficient Verification of Interrogatories*

4    Plaintiff also argues that both Brad and Mason's answers to their respective

5  interrogatories lack a sufficient verification of their truth by the answering party.  (ECF No. 64 at

6  14-15, 22.)

7    Rule 33(b) requires that "[e]ach interrogatory must . . . be answered separately and fully in

8  writing under oath[,]" and "[t]he person who makes the answers must sign them . . . ."  Fed. R.

9  Civ. P. 33(b)(3) & (5).  "The oath requirement applicable to interrogatories has legal significance.

10  Courts have routinely refused to consider interrogatories that do not comport with that mandate."

11  Richard v. Dignean, 332 F.R.D. 450, 457 (W.D.N.Y. 2019) (quotation omitted); Cris v. Fareri,

12  2011 WL 13228490, at *1 (D. Conn. Dec. 13, 2011) ("Requiring a party to sign interrogatory

13  responses under oath serves the critical purpose of ensuring that the responding party attests to the

14  truth of the responses." (quotation omitted)); see 4 Bus. & Com. Litig. Fed. Cts. § 34:20 (5th ed.)

15  ("If the responding party fails to verify its answers properly or at all, the court may exclude the

16  answers on summary judgment, strike the answers or monetarily sanction the party.").

17    "However, Rule 33 does not prescribe any particular form of verification."  Id. (quotation

18  omitted).  Dignean, 332 F.R.D. at 457.  "The courts that have addressed the issue of the form that

19  an interrogatory oath must take appear to be in agreement that the oath requirement may be

20  satisfied either by [(A)] having the statement affirming the responses sworn to before a notary

21  public or [(B)] by providing a declaration pursuant to 28 U.S.C. § 1746."

22    "Section 1746 provides that an unsworn matter may be treated as sworn, provided that it is

23  'prove[n]' by the unsworn declaration, certificate, verification, or statement, in writing of such

24  person which is subscribed by him, as true under penalty of perjury, and dated, in substantially

25  the . . . form" of the model declaration provided. In re World Trade Ctr. Disaster Site Litig., 722

26  F.3d 483, 488 (2d Cir. 2013) (quoting § 1746).  The model declaration provided for declarations

27  executed in the United States reads:

28  ////

22

"I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)".

28 U.S.C. § 1746.

Courts uniformly hold that to substantially comply with § 1746, "the declaration must be made under penalty of perjury and must be attested to be true." Weldon v. Anaya, 2017 WL 1349005, at *2 (E.D. Cal. Apr. 6, 2017) (rejecting summary judgment declaration not mentioning penalty of perjury and stating, "I hereby declare that the foregoing is correct and true to the best of my knowledge, information and belief."); see Kersting v. United States, 865 F. Supp. 669, 676–77 (D. Haw. 1994) (necessary elements are that the unsworn declaration contains the phrase "under penalty of perjury" and states that the document is true); Dairy v. Harry Shelton Livestock, LLC, 2019 WL 631493, at *5 (N.D. Cal. Feb. 14, 2019) ("§ 1746's 'suggested language' is merely intended to ensure that declarations are attested to be true and correct under penalty of perjury."); see also Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995) (stating verified complaint substantially complied with § 1746 when plaintiff stated under penalty of perjury that "the facts stated in the . . . complaint [are] true and correct as known to me.").

After months of debating the sufficiency of Brad and Mason Visman's attestations for their answers, on March 24, 2022, defendants provided the following Amended Verification (assertedly for both defendants, though only Mason's was provided to the court):

I have read the following documents and know their contents:

- [Mason Visman's Interrogatory responses served 1/17/22]

- [Mason Visman's Supplemental RFP responses served 2/22/22]

**The matters stated therein are true to the best of my knowledge, information, and belief. I declare under penalty of perjury that the foregoing is true and correct.**

(ECF No. 65 at 22, Ex. E (emphasis added).)

Plaintiff argues that this amended verification is still deficient because Visman "is attesting only to the fact of his information and belief." (ECF No. 64 at 15.) Plaintiff's counsel is

23

1    correct that an individual answering interrogatories on his own behalf must answer according to

2    his own personal knowledge; whereas corporate representatives answering interrogatories for a

3    corporate party need not have personal knowledge and can instead answer based on available

4    information.  See Bleers v. Wal-Mart Stores East, LP, 2021 WL 2106531, at *4 (M.D. Fla. 2021)

5    ("A corporate representative answering interrogatories need not personally know the facts.");

6    U.S. ex rel. O'Connell v. Chapman Univ., 245 F.R.D. 646, 650 (C.D. Cal. 2007) ("O'Connell").

7            However, plaintiff overstates things by saying Visman's amended verification attests

8    "only to the fact of his information and belief."  (ECF No. 64 at 15 (emphasis added).)  Rather,

9    Visman declares the answers are true "to the best of [his] knowledge, information, and belief."

10   (ECF No. 65 at 22.)  The amended verification satisfies § 1746's core requirements of attestation

11   under penalty of perjury and attestation of truth and accuracy.  See Kersting, 865 F. Supp. at 676–

12   77.  Plaintiff's critique seems to be that answering based on "knowledge" and based on

13   "information[] and belief" undermines the soundness of the verification.  However, plaintiff cites

14   no authority squarely supporting this position, which is not even fully developed in the Amended

15   Joint Statement.

16           Plaintiff merely cites O'Connell, where the district court rejected the following

17   verification for interrogatory answers:

18               I declare that the matters stated therein are true of my own personal
                knowledge except as to those matters which are stated on information
19               and belief, and as to those matters I believe them to be true; and tha
                [sic] I am willing and competent to testify to such matters if called
20               upon to do so.

21   Id. at 650 n.5.  The court concluded that "[s]ince O'Connell swore to her answers, in part, based

22   on information and belief rather than her personal knowledge, she did not comply with Rule 33."

23   Id. at 650.  It could be said that the Vismans here are swearing "in part, based on information and

24   belief."  However, the O'Connell verification itself reads quite differently from the Vismans'

25   verifications, which do not distinguish between some matters being based on their knowledge and

26   others being based solely on information and belief.

27           From the court's own brief research, references like the Vismans' to matters being true "to

28   the best of [one's] knowledge and belief" do not prevent a declaration from substantially

                                                    24

1   complying with § 1746—so long as they also mention the penalty of perjury.  See, e.g., Kersting,

2   865 F. Supp. at 676 (accepting as sufficient affidavit stating "under penalty of perjury [ ] the

3   foregoing is true and correct to the best of my knowledge and belief" (emphasis added)).

4          Further, defendants point to Bona Fide Conglomerate, Inc. v. SourceAmerica, 2017 WL

5   3149578, at *7 (S.D. Cal. July 24, 2017), where the court likewise found that the answering

6   party's "verification of the interrogatories cannot fairly be characterized as verified solely upon

7   information and belief."  The court noted that—as appears to be the case here (although not all

8   interrogatories were provided with these motions)—"[n]one of the actual answers to the

9   interrogatories are stated on information and belief," even though the closing verification there

10  stated in part "I am informed and believe that the matters stated therein are true," in addition to

11  declaring them true under penalty of perjury.  Id.  (accepting interrogatory answer verification as

12  sufficient).  C.f., United States v. Quebe, 321 F.R.D. 303, 309 (S.D. Ohio 2017) (rejecting

13  interrogatory answers that began with the caveat of "[u]pon information and belief . . . .").

14         Accordingly, the court finds the Vismans' amended verifications satisfy Rule 33's oath

15  requirement.  No further amendment of these verifications is required.

16             **C.  Substance of Responses**

17                 *1.  Interrogatories to Mason*

18         Plaintiff seeks to compel Mason Visman to provide supplemental answers to its Set One

19  Interrogatories No. 1 – 8.

20         Interrogatory No. 1:  Do YOU use the term APPLE HILL (including any term

21  incorporating APPLE HILL) as a trademark or a service mark?  [[And if YES, to identify (a) each

22  mark, (b) the goods and services in which used, (c) starting use date, (d) whether continuous, and

23  (e) geographic areas of use]]

24         Answer:

25             Subject to the General Objections: I use the term Apple Hill in
26             connection with a web site that promotes the goods and services
                offered and sold in the Apple Hill growing area. The Patent and
27             Trademark Office says that this is not a service mark because it is
                descriptive of the geographic place known as Apple Hill. I do not use

28             ////

                                    25

it to promote any goods made or offered by me. I first used the term on the web site in or about December 2012. This use has been continuous. The web site is accessible by anyone with a web browser so the potential geographic scope of the use is global. I believe, however, that users consist of people who are interested in visiting the Apple Hill growing area.

(ECF No. 64.1 at 17-18, Ex. D.)

Plaintiff first complains that Mason's "General Objections" listed on the opening two pages of its answers are non-compliant blanket objections, and Mason should serve amended answers without these opening objections.  The court views these as fairly standard opening objections, and because defendant does not rely on any of these objections as a basis to refuse to answer, the court will not order amendment purely to eliminate these objections.

Substantively, plaintiff argues that Mason's answer does not give a "specific answer" to the questions and is "clearly evasive."  (ECF No. 64 at 16.)  Plaintiff states, "If Defendant MASON VISMAN does not use APPLE HILL as a Trademark of Service Mark, then the responsive Answer to Interrogatory No. 1 would be NO, and nothing else."  (Id.)

The court agrees with Mason that his answer in fact addresses each of the subparts posed in the interrogatory, identifying "the term Apple Hill" as the mark he uses—and does not claim that he himself takes the position this is not a service mark, but rather that the USPTO has stated such.  Plaintiff gives no explanation of how this answer is evasive or nonspecific.  **No amended answer is required for Interrogatory No. 1.**

Interrogatory Nos. 2-8 each ask about Mason's use of his own registered APPLE HILL service mark "in commerce" as to each of the six different services listed in his '963 Registration. (ECF No. 64.1, Ex. D.)  Plaintiff argues these interrogatories are relevant to priority of use and infringement.  (ECF No. 64 at 16.)  The extent of plaintiff's complaint with defendants' answers is that each answer is "evasive and incomplete. Such Answers essentially comprise the statement they are services provided on Defendant's website, but otherwise are non-responsive. There is no specific answer respecting Defendant's use in commerce, nor the dates of such use."  (Id.)  Based on the discussion at the hearing, plaintiff's counsel seems to take issue with the fact that Mason's answers points to his website services as the only example of his use of the APPLE HILL service

26

1     mark in each of the six service categories.  That is indeed what the court reads Mason's answers

2     to indicate:  that the only service he offers in connection with all six service categories is running

3     his websites.  However, that does not make the answers "evasive and incomplete."  **The motion**

4     **is denied as to Interrogatories No. 2-8.**

5                                    *2.  RFPs to Mason*

6           Plaintiff also moves to compel Mason Visman to provide fully compliant responses to

7     plaintiff's First Set of RFPs and to actually produce responsive documents.  Plaintiff does not

8     provide, and the court has not elsewhere found, a copy of plaintiff's First Set of RFPs to Mason

9     or his responses.  Still, plaintiff's complaints regarding Mason's RFP responses appear broad

10    enough to address in part without having seen the RFPs themselves.  Plaintiff's main complaint is

11    that a series of five (5) General Objections again precede all of Mason's RFP responses; and that

12    under "General Objection" No. 5, it is evident that Mason Visman "has refused to produce any

13    documents."  (ECF No. 64 at 19.)

14          Without having seen the First Set of RFPs in its entirety, the court cannot opine on the

15    validity or harmfulness of the General Objections.  The court notes that the first three General

16    Objections to the RFPs (as quoted by plaintiff's counsel in the Amended Joint Statement) mirror

17    the first three asserted in Mason's interrogatories.  What Mason lists as General Objection No. 5

18    is not a traditional sort of general objection.  It states:

19                  5. Defendant will not produce any documents until: (a) a suitable
               protective order is stipulated to by the parties, and (b) Plaintiff has
20             given an unequivocal commitment to produce its documents by a
               date certain.
21

22    (ECF No. 64 at 18.)

23          The court sees no grounds for maintaining such an "objection."  That defendants initially

24    wished to await a stipulated protective order makes some sense, but that stipulated protective

25    order is now in place.  However, as to condition "(b)," one party's failure to provide timely

26    discovery does not provide a basis for the other party to withhold its own discovery in return.  As

27    they say, two wrongs do not make a right.  See Sullivan v. Biter, No. 1:15-cv-00243-DAD-SAB

28    (PC)) 2019 U.S. Dist. LEXIS 193267, at *11-12) (E.D. Cal. Nov. 5, 2019) ("A party may not

1    condition its compliance with its discovery obligations on receiving discovery from its opponent."

2    (quotation omitted)).

3           Still, reading on in plaintiff's contentions, it becomes clear that Mason Visman has in fact

4    produced "some documents" via email—which plaintiff complains were not organized or labeled

5    to correspond to any of the RFPs.  (ECF No. 64 at 19.)  Plaintiff's counsel's initial review

6    indicates these documents are likely responsive only to 2 or 3 categories of requested RFPs.  (Id.

7    at 19-20.)  At the hearing, defense counsel confirmed that Mason had produced some 250 pages

8    of documents thus far and is no longer withholding any documents based on General Objection

9    No. 5.  **Mason must supplement his Responses to eliminate General Objection No. 5 and to**

10   **identify by BATES number the documents produced in response to each of the RFPs.**

11          RFP No. 25 – Privilege Objection

12          Plaintiff also complains that "some of the Responses" purport to assert a privilege and

13   then state that "subject to [the] objections," there are no documents.  (ECF No. 18-19.)  Plaintiff

14   gives as an example only RFP No. 25, which reads:

15                 **DOCUMENT REQUEST NO. 25**. All licenses, assignments,
                   agreements, or contracts, and all COMMUNICATIONS, between
16                 YOU and any other Defendant, El Dorado Orchards, Boa Vista
                   Orchards, or any other Boa Vista enterprise, referring or relating to
17                 the term APPLE HILL.

18                                  **RESPONSE**

19                 Defendant objects to this request based on the joint defense privilege.
                   Subject to these objections, there are no responsive documents.
20

21   (Id. at 19.)

22          The court cannot rule on the sufficiency of any other RFP responses without having seen

23   them, but it can and will rule on this response which is clearly noncompliant.  As discussed with

24   defendant EDO's RFP responses, above, this response leaves it totally unclear whether there are

25   responsive documents that are being withheld based on the joint defense privilege (or any of the

26   general objections listed in the preamble).  Again, this is contrary to Rule 34, which plainly

27   requires that "[a]n objection must state whether any responsive materials are being withheld on

28   the basis of that objection."  Fed. R. Civ. P. 34(b)(2)(C).  If there are responsive documents but

they are being withheld based on the joint defense privilege, defendant must provide a privilege log summarizing the documents being withheld and explaining why the privilege applies. If there are no responsive documents—which seems hard to believe given the nature of the request—defendant must so state and provide a description of the searches conducted.

Defendants would do well do heed this ruling and amend other similarly phrased responses accordingly in order to avoid yet another motion to compel.

Order as to Mason Visman

**Mason Visman shall (A) amend his responses to the First Set of RFPs overall by eliminating General Objection No. 5 and identifying by BATES number the documents produced in response to each of the RFPs; (B) amend his response to RFP No. 25 consistent with this order; and (C) produce all responsive documents by May 20, 2022.**

### 3. *Interrogatories to Brad*

Plaintiff's final set of requests are directed to defendant Brad Visman. Plaintiff moves to compel Brad to provide fully compliant answers to its First Set of Interrogatories. Plaintiff generally describes the 25 interrogatories propounded but again fails to present the court with copies of either the interrogatories or Brad's answers. Aside from the verification issue addressed above, plaintiff's main complaint here is also with one of the General Objections listed in the preamble to Brad's interrogatory answers. The contested "general objection" is again labeled No. 5, but it is different from the General Objection No. 5 at issue in Mason's RFP responses. As reproduced in the Amended Joint Statement, it reads:

> 5. Defendant objects to Requests 5-12 on the basis of extreme burden. The interrogatories ask for eight (8) years of data. As explained in the responses, I do not have the data readily available to respond to these interrogatories. If I were able to identify some documents from which a response could be derived, this might require examining, auditing, compiling, abstracting, or summarizing hard copy cash register receipts (to the extent they still exist). This would be incredibly time-consuming for either party, and the burden of deriving or ascertaining the answer will be substantially the same

////

////

////

29

1               for either party. I am willing to allow Plaintiff (subject to a Protective
Order) the opportunity to examine and audit the records and to make
2               copies, compilations, abstracts, or summaries.

3  (ECF No. 64 at 21-22.)

4         As defendants recognize, this General Objection No. 5 also "is not truly a 'general

5  objection,' but a specific objection that applies to Request Nos. 5 –12, namely that the requests

6  are overly burdensome in seeking eight years of data, where Mr. Visman does not have the

7  information readily available." (<u>Id.</u> at 32.)  According to plaintiff, Interrogatories Nos. 5 – 12

8  "request specific information regarding Defendants' sales of various goods sold by Defendants

9  under the APPLE HILL mark." (<u>Id.</u> at 20.)  Without having seen the interrogatories at issue, the

10  court cannot rule on the validity of General Objection No. 5 or any other objection asserted.

11        Plaintiff also complains that each of Brad's answers was preceded by the statement

12  "Subject to the General Objections," and that "No objection was stated with specificity in any

13  Answer." (<u>Id.</u> at 22.)  Even if the interrogatories at issue were provided to the court, this

14  argument does not adequately present a discovery dispute for the court's resolution.

15      **The motion is denied without prejudice as to the interrogatories to Brad Visman.**

16             4.  <u>*RFPs to Brad*</u>

17        Finally, plaintiff moves to compel Brad Visman to provide fully compliant responses to its

18  First Set of RFPs and to actually produce—or better organize—responsive documents.  As with

19  the motion for Mason to supplement his RFP responses, plaintiff does not provide a copy of

20  plaintiff's First Set of RFPs to Brad or his responses.  Again, plaintiff presents a broad complaint,

21  however, about the General Objections asserted in Brad's preamble—which are identical to the

22  General Objections asserted in Mason's RFP responses.  (ECF No. 64 at 23, 33 (stating that

23  general objections are identical).)

24        For Brad, however, plaintiff does not complain of General Objection No. 5 (making

25  production contingent on a stipulated protective order and plaintiff first producing its own

26  documents).  Instead, plaintiff complains of the combination of General Objection No. 6, plus

27  Brad's responses to 30 of the RFPs that "There are no responsive documents." (<u>Id.</u> at 24.)

28  General Objection No. 6 (as reported by plaintiff) states that "Each of the responses is subject to

1   the General Objections."

2        This combination effectively achieves, through different mechanics, the same

3   impermissible result of stating that "subject to the above objections, there are no responsive

4   documents."  As discussed multiple times now, this violates Rule 34.  **Brad Visman must**

5   **amend his RFP responses to clearly state whether responsive documents have been**

6   **withheld, and if so, based on what objections.  Brad's amended responses must explain how**

7   **each and every objection asserted specifically relates to the given request.**

8        As to actual production of documents from Brad, plaintiff's counsel again confusingly

9   complains simultaneously that Brad is refusing to produce documents under General Objection

10  No. 5, and that Brad has produced "some documents" via email.  (ECF No. 64 at 24.)  According

11  to plaintiff's counsel, the documents produced by email are not organized by RFP, and "do not

12  appear [] responsive to any of the fifteen (15) categories of documents for which Defendant stated

13  'Responsive documents will be produced.'"  (Id.)  At the hearing, defense counsel confirmed that

14  (like Mason) Brad also had produced some 250 pages of documents thus far, with another

15  roughly 150 pages to come.

16        Order as to Brad Visman

17        **Brad Visman shall (A) amend his RFP responses consistent with this order,**

18  **including by stating objections with specificity and identifying by BATES number the**

19  **documents produced in response to each of the RFPs; and (B) produce all responsive**

20  **documents by May 20, 2022.**

21      **IV.    Defendants' Motion to Compel**

22        Last, the court turns to defendants' motion to compel discovery from plaintiff AHG.

23  (ECF No. 57.)  In the course of preparing the Amended Joint Statement at the court's instruction,

24  the parties resolved several of the discovery requests at issue:  RFP Nos. 14, 15, 29, and 40.

25  However, the parties had not resolved the question of where and when actual production of

26  plaintiff's documents would occur, despite the court's express order for plaintiff's counsel to

27  provide a range of possible dates.  The court first addresses the four unresolved individual

28  discovery requests and then sets deadlines for production of responsive documents.

1          **A.  Unresolved Discovery Requests**

2               As described in the Amended Joint Statement filed May 4, 2022, defendants' remaining

3     discovery requests requiring judicial intervention were Interrogatory No. 5 and RFP Nos. 6, 27,

4     and 28. (ECF No. 66 at 5-17, 18-22.)  At the May 11 hearing, the court learned for the first time

5     that on Friday, May 6, plaintiff had served amended responses to each of these requests.  Defense

6     counsel indicated he had only barely reviewed the amended responses and was unsure whether

7     they were satisfactory.  Although the court is loathe to issue what might be an advisory opinion,

8     in the interest of avoiding a further motion on these amended responses, the court provides the

9     following analysis of the responses and disputes as they stood at the time the Amended Joint

10    Statement was filed.  To the extent plaintiff's amended responses do not comply with this order,

11    defendants may seek further amended responses from plaintiff.

12              *1.  Interrogatory No. 5*

13         Interrogatory No. 5:  State whether you have lost sales, licensing fees, or other revenue

14    due to the alleged use by Defendants of your APPLE HILL marks, and if the answer is anything

15    other than an unqualified "no," state the amount in dollars you claim to have lost and provide a

16    detailed explanation of how that number was calculated.

17              Answer:

18         Yes. Specific amounts have not yet been calculated.  (ECF No. 66 at 56.)

19         Analysis

20         This is a patently insufficient answer, but based on plaintiff's stated position with respect

21    to the form of recovery sought in this action, only minor amendment is needed.

22         EDO argues that this interrogatory seeks information relevant to assessing plaintiff AHG's

23    damages sustained as a result of the alleged infringement.  It makes sense that EDO would

24    propound this interrogatory since the FAC seeks all forms of recovery permitted under the

25    Lanham Act:  plaintiff's damages, defendant's profits, and costs/attorney's fees.  (FAC at 19,

26    Prayer ¶¶ 6-9.)

27         Plaintiff's above-quoted answer to the interrogatory, provided in July 2021, likewise

28    suggested that it would seek to recover its own damages/losses and just had not yet calculated

1  such damages.  (ECF No. 66 at 56, 57.)  However, in the joint statements filed in support of the

2  instant discovery motions, plaintiff clearly states that it "does **NOT** seek damages based upon

3  *Plaintiff's lost profits*."  (ECF No. 64 at 39 (original formatting).)  Plaintiff offers to provide an

4  amended answer to Interrogatory No. 5 to "clarify that it is seeking Defendants profits and/or

5  other statutory damages pursuant to Section 1117, including treble damages and statutory

6  damages under Subsection (d); and, that Plaintiff is not seeking damages based upon losses

7  suffered by Plaintiff."  (ECF No. 66 at 11.)

8  **If plaintiff is committed to this position, plaintiff must amend its answer to clearly**

9  **state that it is not seeking damages based upon losses suffered by plaintiff.**  In so answering,

10  plaintiff will be estopped from claiming any recovery based on its own lost profits or other losses

11  in this action.  See Aliotti, 217 F.R.D. at 498 (noting that plaintiff would be estopped from

12  claiming higher pre-injury income than the amount stated in response to forthcoming

13  interrogatory).  Plaintiff's counsel indicated at the hearing that the amended answer to

14  Interrogatory No. 5 does so.

15  *2.  RFP No. 6*

16  Request:  All documents discussing or relating to your decision not to sue Mr. Mason

17  Visman when he refused to stop using Apple Hill in response to the demand letter sent by John P.

18  Costello in 2013.

19  Response:

20  Plaintiff AHG objects to this Document Request on the grounds that it is ambiguous and

21  unintelligible. The web site complained of in a letter to the Defendants and other Visman

22  Enterprises thereafter became inoperable. Plaintiff AHG will not produce documents pursuant to

23  this Request.  (ECF No. 66 at 63.)

24  Analysis

25  This response is improper as it attempts to unilaterally limit the scope of the request to a

26  single website.  The 2013 demand letter (which EDO already produced to plaintiff but which the

27  court has not seen) apparently complained of Mason's use of the website www.visitapplehill.com.

28  Defendants argue in the Amended Joint Statement that the website never became "inoperable" but

33

1  rather was directly accessible until 2014 and since then has redirected visitors to

2  www.applehillca.com, "another site operated by Defendant Mason Visman that contains the same

3  uses of 'Apple Hill' that AHG complained of in its 2013 demand."  (ECF No. 66 at 12.)

4  Plaintiff's counsel maintains without explanation that it is "simply not true" that the

5  visitapplehill.com website was never inoperable.  (Id. at 14.)  She says she will serve an Amended

6  Response and produce documents showing that "www.applehillca.com did not exist until 2014;

7  and, that the website complained of [in] the letter, www.visitapplehill.com, was in fact not

8  operative after [the] 'letter' was sent."  (Id.)

9       Such an amendment would be a good start, but it does not solve the problem that RFP

10  No. 6 is not in fact limited just to the web site complained of in the 2013 letter.  RFP No. 6 asks

11  about *all* of Mason's continuing uses of "Apple Hill" after the 2013 letter.  **Plaintiff should**

12  **amend its response to state whether or not responsive documents exist—without limitation**

13  **to a single web site—and if documents do exist, whether any are being withheld and on**

14  **what basis.**  The request does not strike the court as "ambiguous" or "unintelligible," and those

15  objections are overruled.

16               *3.   RFP Nos. 27 & 28*

17       Request (#27): A copy of your web page.

18       Request (#28): A copy of your Facebook page.

19       Notwithstanding the poor wording of the initial requests, defendants clarified through

20  meet and confer that they seek "a copy of all of the pages constituting [AHG's] web site" and "a

21  copy of [AHG's] entire Facebook page."  (ECF No. 66 at 19.)  (www.applehill.com and

22  https://www.facebook.com/applehillofficial)

23       Plaintiff's counsel agreed to "work on downloading" the web pages, and, if "successful,"

24  produce the entire download; otherwise, she would produce "representative pages."  (Id.)

25  Plaintiff's counsel on April 25th informed defense counsel that she was not able to download the

26  entire website or the Facebook page, but that she had "taken screen shots of many representative

27  pages," which she would produce electronically.  (Id. at 21.)  Plaintiff takes the position that these

28  online sources are "readily available" to defendants who have "exactly the same access to this

34

1    information as does plaintiff"; and that the burden and expense of plaintiff producing the contents

2    outweighs their benefit.  (Id.)

3         Defense counsel responds that "representative pages" are insufficient and that defendants'

4    own capture and production of these documents may be less complete and accurate – and would

5    give rise to issues of verification.  (Id. at 19-20.)  Nevertheless, defendants offer to limit the

6    request to "any portions of Plaintiff's website and Facebook page that are inaccessible and/or

7    hidden from the public."  (Id. at 20.)

8         Analysis

9         Defendants argue that the contents of the website and Facebook page are relevant to see

10   how plaintiff advertises its services and promotes is licensees' goods to the public, part of the

11   alleged services under the mark.  Defendants argue they are "entitled to know how Plaintiff has

12   used its asserted trademarks and/or service marks" and that a party's production of its own

13   website is customary in these cases.  (ECF No. 66 at 19, 20.)

14        The court does not doubt this is so, nor does the court see a great burden in having

15   plaintiff use one of the various services to capture its entire website and Facebook page.

16   Nevertheless, given defendants' willingness to narrow the scope of RFP Nos. 27 & 28, the more

17   expedient path forward is to have plaintiff simply amend its responses to state whether there exist

18   any documents responsive to the narrowed requests for "any portions of Plaintiff's website and

19   Facebook page that are inaccessible and/or hidden from the public."  Plaintiff's counsel indicated

20   at the hearing that there were none.

21        **B.  Actual Production**

22        Finally, but most frustratingly to the court, is the subject of plaintiff's actual production of

23   documents for defendants' inspection.  Defendants report that plaintiff has produced fewer than

24   100 pages of documents, perhaps as few as 30, over the course of this litigation.  Since August

25   2021, counsel have been debating the time, place, and method of production of plaintiff's

26   documents.  (ECF No. 66 at 72-73.)  Plaintiffs' counsel (who operates out of Sacramento,

27   California) originally objected to what she believed was a demand to physically produce

28   documents to defense counsel Mr. Reidl at his office in Half Moon Bay, California.  Mr. Reidl

35

1     clarified that documents could be produced electronically or mailed.  (Id.)

2            Without conceding as unreasonable its original request that documents be produced to

3     Mr. Reidl's Half Moon Bay office, defense counsel—now based in Napa, California—ultimately

4     offered (repeatedly) to personally inspect responsive documents at plaintiff's counsel's

5     Sacramento law office anytime during the week of April 25 – 29, 2022.  (ECF No. 66 at 25.)

6     Plaintiff's counsel either rejected or ignored these offers.  (Id.)

7            On reading this in the parties' original joint statement, the court on April 28, 2022,

8     ordered as part of its interim instructions that "Plaintiff must identify a range of dates in the near

9     future when [] physical inspection may occur."  (ECF No. 63 at 3.)  However, plaintiff's counsel

10    did not respond to defense counsel's May 2 request for a proposed date range, and as of the filing

11    of the Amended Joint Statement, plaintiff's counsel had not provided a date range for inspection.

12    Instead, in the Amended Joint Statement, plaintiff's counsel says she "will work with Defendants'

13    Counsel to arrange a mutually acceptable date and time for production at Plaintiff's Counsel's

14    offices."  (ECF No. 66 at 27.)  The court imposes the below monetary sanction for this violation

15    of an express court order regarding discovery—in addition to the sanctionable conduct in

16    preparing plaintiff's own motion to compel.

17           At the hearing, the parties agreed to meet at a third-party court reporting service to

18    accomplish the inspection and copying of plaintiff's documents.  The parties were ordered to file

19    a notice of the date on which this inspection would occur.  Following the hearing, however,

20    plaintiff's counsel contacted the undersigned's courtroom deputy and filed a Joint Statement that

21    due to COVID-19 concerns, the parties had agreed that physical inspection of the documents

22    should be avoided.  (ECF No. 68.)  It was further agreed that, instead, plaintiff's counsel would

23    undertake the copying and digitizing of plaintiff's responsive documents and electronically

24    produce them to defense counsel by May 17, 2022.  The court adopts and so orders this

25    stipulation.

26                                              **ORDER**

27    For the foregoing reasons, IT IS ORDERED that:

28           1.  By May 20, 2022, plaintiff's counsel, Catherine A. Straight shall personally pay the Clerk

                                                   36

of Court a monetary fine of $250.00 for violating the court's April 28, 2022 order and for other sanctionable conduct described above.

2. Defendants' motion to quash the subpoena dated March 28, 2022, served on Roberts & Company, Inc. (ECF No. 50) is GRANTED.  No documents need be produced in response to that subpoena.

3. Plaintiff's motion to compel discovery from defendant EDO (ECF No. 59) is GRANTED as follows:

    a. As to plaintiff's First Set of RFPs Nos. 1-9, EDO shall produce all of its California state sales tax returns filed for sales received from January 1, 2014, through the present.  For purposes of discovery, those tax returns shall be designated Highly Confidential – For Attorneys' Eyes Only under the stipulated protective order. Such production shall be made in electronic form no later than May 20, 2022.

        i. Contemporaneous with that production, EDO shall supplement its responses to RFP Nos. 1-9 to eliminate non-specific objections and state that all responsive documents have been produced.

    b. As to plaintiff's First Set of RFPs Nos. 10-36, EDO shall amend its responses consistent with this order, including by explaining how each and every objection asserted specifically relates to the given request; conducting the searches necessary to state whether responsive documents have been withheld, and if so, why and based on what objections.  Production of all responsive documents and supplemental responses shall be served no later than May 20, 2022.

4. Plaintiff's motion to compel discovery from defendants Brad and Mason Visman (ECF No. 49) is GRANTED IN PART and DENIED IN PART as follows:

    a. Denied as to Mason Visman's answers to plaintiff's Interrogatories Nos. 1-8.

    b. Granted in part as to Mason Visman's responses to plaintiff's First Set of RFPs. No later than May 20, 2022, Mason Visman shall:

        i. amend his responses to the First Set of RFPs overall by eliminating General Objection No. 5 and identifying by BATES number the documents

1                           produced in response to each of the RFPs;

2                       ii.   amend his response to RFP No. 25 consistent with this order; and

3                       iii.   produce all documents responsive to the First Set of RFPs that are not

4                           being withheld based on a specific objection or privilege.

5            c.   Denied without prejudice as to Brad Visman's answers to plaintiff's First Set of

6                 Interrogatories.

7            d.   Granted in part as to Brad Visman's responses to plaintiff's First Set of RFPs.

8                 <u>No later than May 20, 2022</u>, Brad Visman shall:

9                       i.   amend his RFP responses consistent with this order, including by stating

10                           objections with specificity and identifying by BATES number the

11                           documents produced in response to each of the RFPs; and

12                       ii.   produce all documents responsive to the First Set of RFPs that are not

13                           being withheld based on a specific objection or privilege.

14    5.   Defendants' motion to compel discovery from plaintiff AHG (ECF No. 57) is GRANTED

15          on the terms stated above.  As stipulated by the parties, plaintiff's counsel shall

16          electronically produce all responsive documents <u>no later than May 17, 2022</u>.

17 Dated:  May 12, 2022

18                                                  _____

19                                          CAROLYN K. DELANEY
                                                 UNITED STATES MAGISTRATE JUDGE

20

21     19, appl.2085

22

23

24

25

26

27

28